## LINDSEY *v.* THE STATE.

1. On the trial of one for the murder of his wife it was competent, as against an objection on the grounds of irrelevancy and of tendency to prejudice the jury, for the sheriff to testify that while the defendant was in his custody by virtue of a warrant issued on complaint of the wife, charging him with the offense of assault with intent to murder her, the witness exhibited to the defendant the warrant and also the wife's petition for habeas corpus for the possession of their minor child, as tending to show motive on the part of the defendant to kill his wife, it further appearing that the homicide was committed a few hours thereafter.

2. On the trial of one for murder it was irrelevant, on cross-examination of a witness, who testified that he was present at the scene of the homicide, and who had narrated the conduct of the deceased, to ask whether the witness did not have a pistol on that occasion; it not appearing that the witness had any connection with the circumstances attending the homicide, and the sole ground for the admission of the testimony being, as stated, that it was to show the animus of the witness towards the defendant.

3. Counsel for the defendant propounded to a witness the question: "You determine a man is sane or insane upon whether he knows right from wrong; that is your rule?" Counsel had asked the same question a number of times, and the witness was apparently endeavoring to answer counsel willingly and honestly. The witness answered the question when last propounded, "Yes, sir, and by his acts." Whereupon the court asked counsel, "That is the legal standard to test these questions, is it not?" To which counsel replied, "Yes, sir, as to whether he is sane or not; but there are exceptions to that rule." The court fully charged the law of insanity, and no exception is taken to the accuracy or completeness of the instruction of law. In view of the attendant circumstances, the propounding of the question by the court to counsel is not ground for new trial.

4. The evidence did not authorize an instruction on the law of voluntary manslaughter.

5. The verdict is supported by the evidence.

MARCH 15, 1916.

Indictment for murder. Before Judge Worrill. Clay superior court. November 29, 1915.

*M. C. Edwards, E. R. King,* and *Ben M. Turnipseed,* for plaintiff in error. *Clifford Walker, attorney-general, B. T. Castellow, solicitor-general, R. R. Arnold,* and *Mark Bolding,* contra.

EVANS, P. J. The defendant was convicted of the murder of his wife. The evidence tended to show a course of ill treatment by the defendant of his wife, which finally culminated in a separation. The wife, accompanied by her brothers, went to the county seat and there procured a warrant against her husband, charging him with assault with intent to murder her; she also instituted proceedings of habeas corpus to recover possession of the child of the marriage, who was between one and two years of age. These papers were lodged with the sheriff, who served them on the defendant. The sheriff, with the defendant and the child in his custody, came by the house of the uncle of the wife, where she had stopped on her return after suing out the warrant, for the purpose of delivering the child to the wife. The child was averse to being taken from its father by an uncle, and the father volunteered to take it to his wife. He was permitted to do this by the sheriff. The defendant entered the house, and into a room where there were two beds, one on each side of the door. On one of the beds was a hat and a coat, which partly concealed a pistol belonging to a member of the wife's family. The defendant engaged his wife in conversation, and asked her if she was coming back to him. Upon her refusal to accede to his request, he seized the pistol lying on the bed and shot his wife, inflicting a mortal wound. He came out of the room with the pistol in his hand, and said that he had killed his wife, as he intended, and was willing to suffer for it.

1. In the course of the trial the sheriff was permitted to testify that there was placed in his hands a warrant sued out by the decedent, charging her husband with assault with intent to murder, and also a writ of habeas corpus. At the time he arrested the defendant he exhibited the warrant to him, and informed the defendant of its nature, and that it had been sworn out by his wife. The warrant had been lost by the sheriff, and he was unable to

find it.  This occurred immediately after he had served the papers upon the defendant, and while he was at the defendant's home and on the day of the homicide.  This testimony was objected to as irrelevant and immaterial, because it was a mere accusation charging him with a different offense from that for which he was on trial, and tended to prejudice the jury against him.  It is settled that the State has a right to prove a course of ill treatment of his wife by the husband, on the trial of the husband for her murder. *Roberts* v. *State,* 123 *Ga.* 146 (51 S. E. 374).  Likewise, as tending to establish the motive of the accused in perpetrating the homicide, it is proper to admit in evidence, on behalf of the State, an indictment which is pending against the accused for assault with intent to murder his wife.  Taylor *v.* State, 14 Tex. App. 340; 1 Wharton's Crim. Ev. § 43.  The testimony of the sheriff, when taken in connection with other relevant facts in the case, tends to establish the motive which actuated the defendant in his hostility towards the deceased, and is competent to be considered in connection with the other testimony in determining the question of motive.

2.  One of the witnesses for the State testified that he was at the house where the homicide occurred, having accompanied the deceased and her two brothers.  He was present when the defendant with the sheriff drove up to the house in an automobile. He testified, that the defendant entered into the room, where he had an interview with his wife, who held the baby in her arms. He heard the defendant ask her if she was coming back to him and stop all that trouble, and she replied in the negative, and immediately he heard the shot from the pistol; and the defendant came out of the door with the smoking pistol in his hand, and said, "I killed her; that is what I wanted to do.  Now you can do what you please with me."  He delivered the pistol to the sheriff, and went back into the room where the deceased was.  On cross-examination the witness was asked, "Is it not true that you had a pistol there that day?"  On objection to the question, the court ruled that it was immaterial whether the witness had a pistol there or not, as there seemed to be no controversy that the pistol with which the defendant killed the deceased did not belong to the witness.  Counsel insisted that it was competent, as illustrating the animus of the witness, to ask him whether he had a pistol on that

occasion. The evidence was excluded. There is nothing in the record tending to connect the witness in any way with the homicide, and we think the court properly excluded the testimony.

3. The eighth assignment of error is sufficiently developed in the third headnote. The complaint of the plaintiff in error of illegality, as therein appearing, does not require a new trial.

4. There was no substantial conflict in the testimony relating to the circumstances attending the homicide. The defendant introduced certain testimony for the purpose of sustaining a contention that he was insane at the time of taking the life of his wife. There is nothing in the record that remotely hints that, if the defendant was responsible for his act, the grade of homicide could have been voluntary manslaughter. Accordingly there was no error in omitting to charge on this subject.

5. Other assignments of error not specifically dealt with are without merit. The evidence authorized the verdict, and no reason appears for reversing the judgment refusing a new trial.

*Judgment affirmed. All the Justices concur.*